NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| EDWIN THOMAS, | : | |
| | : | Civil Action No. 12-4358 (SDW) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Respondent. | : | October 17, 2014 |

**WIGENTON**, District Judge.

Before the Court is Petitioner Edwin Thomas' ("Petitioner" or "Thomas") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("Motion"). For the reasons stated below, this Court **DENIES** Petitioner's Motion and **DECLINES** to issue a certificate of appealability.

### FACTUAL AND PROCEDURAL HISTORY

On November 14, 2008, at about 9:00 p.m., Detectives Modesto Miranda and Edward Vernotica of the Newark, New Jersey Police Department patrolled a public housing neighborhood in an unmarked vehicle. As twenty-five-year veterans of the police force, the detectives knew that the neighborhood, which included 30 Ridgewood Avenue, was a high crime rate area where frequent drug dealings and shootings occurred. The detectives turned into a backyard parking lot off 30 Ridgewood Avenue. The lot was illuminated by street lights and several children were observed playing. When the unmarked car approached the parking lot, someone yelled "5-0." The detectives observed Thomas about 20 feet away, who dropped a

duffel bag and then approached the detectives. The detectives, who wore plain clothes with their police badges hanging from their necks, exited their vehicle. They told Thomas to put his hands on the hood of the car. When Thomas was unable to produce any identification, the detectives patted down Thomas and placed him in the back seat of the vehicle.

Detective Miranda then moved the unmarked car vehicle to shine its headlights on the duffel bag. The detectives again exited the vehicle. At that point, Detective Miranda observed the handle of a gun sticking out of the duffel bag and Thomas was placed under arrest.

Detective Miranda then shone his flashlight on the open portion of the duffel bag and saw another gun. When the duffel bag was eventually opened by police officers from the Crime Scene Unit, they recovered a Romarm Cugir 7.62 millimeter semi-automatic rifle and an Armscor Philippines Model 1600 .22 caliber semi-automatic long rifle.[1]

On March 4, 2009, an Indictment was issued against Thomas, charging him with a violation of 18 U.S.C. § 922(g)(1), as a convicted person unlawfully in possession of a firearm. (*United States v. Thomas*, Criminal No. 09-cr-00147-SDW, ECF No. 1 – Indictment.) Assistant Public Defender Lorraine Gauli-Rufo was appointed as counsel for Thomas on March 25, 2009. (*Id*., ECF No. 5.) An Order for Discovery and Inspection also was entered the same day. (*Id*., ECF No. 6.)

---

[1] Thomas now provides an altogether different factual account of the incident. He states that he was walking to visit a friend when two police officers "accosted" Thomas "at gunpoint." (Pet. Mem. at 7, ¶ 3.) The officers observed Thomas carrying a blue duffel bag and asked Thomas what he was carrying in the bag. Thomas did not respond, but when the officers told Thomas that they were investigating a murder and asked Thomas if he knew anything about it, Thomas replied "no." (*Id*. at ¶¶ 5-8.) Thomas claims that the officers took the duffel bag from him, searched Thomas, and placed Thomas in the back of their unmarked car. They asked Thomas for consent to search the bag and Thomas denied permission. The officers then looked in the bag, placed it in the trunk, and drove Thomas to the rear of the building where they had stopped Thomas. Thomas remained in the car and the officers placed the duffel bag in a grassy area of the buildings. No one else was present, and the officers called for back-up at the scene. (*Id*., ¶¶ 9, 11-17.)

On June 8, 2009, Gauli-Rufo filed an omnibus motion seeking, *inter alia*, (1) suppression of evidence obtained as a result of an unlawful stop and search in violation of the Fourth Amendment, (2) disclosure of exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963), (3) disclosure of evidence to be used under Fed.R.Evid. 404(B), (4) disclosure of expert reports, (5) disclosure of *Jencks* Act materials and the preservation of law enforcement notes, (6) a pre-trial ruling on the admissibility of Thomas' prior convictions, (7) suppression of statements made by Thomas, and (8) a hearing to address these issues.  A text Order was issued on September 16, 2009, scheduling a hearing on the omnibus motion for October 15, 2009.  The day before the hearing, the Government faxed a letter to defense counsel summarizing materials it was required to produce under *Giglio v. United States*, 405 U.S. 150 (1972).  At the October 15, 2009 suppression hearing, this Court, having reviewed the *Giglio* materials *in camera* beforehand, informed the Government that the summary of *Giglio* materials, as provided to defense counsel, did not comply with the spirit and intent of the Court's Order.  This Court then instructed the Government to produce the actual materials, rather than a summary of the facts, to defense counsel, and the suppression hearing was postponed.

On the night of October 15, 2009, the Government produced the *Giglio* materials as directed, and the suppression hearing was conducted on October 19, 2009.  Ruling from the bench, this Court found that there was reasonable suspicion to stop Thomas, and that he had abandoned his duffel bag containing the two rifles.  Accordingly, Thomas' motion to suppress the evidence was denied.

On November 9, 2009, a jury trial commenced.  During trial, defense counsel twice moved for a mistrial.  On the first occasion, Gauli-Rufo moved for a mistrial when the prosecutor referred to Thomas' counsel as a public defender while cross-examining a defense witness.  This

Court denied the motion and provided a curative instruction to the jury. The second motion was made after the Government delivered its rebuttal closing argument. This motion likewise was denied. On November 13, 2009, the jury found Thomas guilty.

On February 22, 2010, this Court sentenced Thomas to 85 months in prison with a three-year term of supervised release, which was within the advisory guidelines range of seventy to eight-seven months.

On March 1, 2010, Thomas filed a notice of appeal to the United States Court of Appeals for the Third Circuit. On April 12, 2011, the Third Circuit affirmed the conviction and sentence. *United States v. Thomas*, 423 F. App'x 199 (3d Cir. 2011).

On July 5, 2012, Thomas timely filed this § 2255 motion. He claims that he was denied effective assistance of counsel, in violation of his Sixth Amendment right, because his counsel advised Thomas that if he asserted ownership of the guns at his suppression hearing, this evidence would be used against him at trial. Thomas further asserts that counsel advised Thomas to reject a plea offer and take his case to trial. (ECF No. 1-3, Pet. Mem. of Law at 15-19.)

On May 8, 2013, the Government filed an answer to Thomas' § 2255 motion. (ECF No 15.)

## **LEGAL STANDARD**

A prisoner in federal custody under sentence of a federal court "may move the court which imposed the sentence to vacate, set aside or correct the sentence" upon three grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" or (3) "that the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a).

4

In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (internal quotation marks and citation omitted). "It is the policy of the courts to give a liberal construction to pro se habeas petitions." *Rainey v. Varner*, 603 F.3d 189, 198 (3d Cir. 2010). The Court may dismiss the motion without holding an evidentiary hearing if the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. *See* 28 U.S.C. § 2255(b); *Liu v. United States*, No. 11-4646, 2013 WL 4538293, at *9 (D.N. J. Aug. 26, 2013) (Simandle, J.) (citing *Booth*, 432 F.3d at 545-46).

## DISCUSSION

A.  Standard Applied on Ineffective Assistance of Counsel Claims

The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. VI. In order to succeed on his claims alleging ineffectiveness of counsel, Thomas must satisfy the two prong test of deficient performance and resulting prejudice as set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See also Premo v. Moore*, 562 U.S. 115, ___, 131 S.Ct. 733, 739, 178 L.Ed.2d 649 (2011) (holding that "[t]o establish ineffective assistance of counsel, a defendant must show both deficient performance by counsel and prejudice"). First, Thomas must show that his counsel's performance (viewed as of the time of counsel's conduct) was inadequate and "fell below an objective standard of reasonableness," in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment." *Id*. at 687-688. Thomas must then show that the deficient performance prejudiced the defense. In other words, Thomas must prove that there was "a reasonable

5

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. *See also Rainey v. Varner*, 603 F.3d 189, 197-98 (3d Cir. 2010).

The U.S. Supreme Court has reiterated that "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S.Ct. 1473, 1485, 173 L.Ed.2d 284, 297 (2010). Because "[a]n ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial," the Supreme Court has admonished lower courts that the "*Strickland* standard must be applied with scrupulous care . . . ." *Harrington v. Richter*, 562 U.S. 86, ___, 131 S.Ct. 770, 788, 178 L.Ed.2d 624 (2011). "It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence,'" however, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id*. at 788 (quoting *Strickland*, 466 U.S. at 690) (internal citations omitted). In order to pass the prejudice prong, Petitioner must show, with reasonable probability, that but for the counsel's professional incompetence, the outcome of the proceeding would have been different. *Strickland* 466 U.S. at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test." *Id*. at 693.

As stated above, Thomas must show both deficiency of performance and prejudice to prevail on an ineffective assistance of counsel claim under *Strickland*. Thus, given the interplay between *Strickland* and § 2255, if Petitioner shows both elements of *Strickland*, he satisfies the requirements of § 2255. *U.S. v. Travillion*, 759 F.3d 281, 289 (3d Cir. 2014). However, in a claim of ineffective assistance of counsel, which has both a deficiency and prejudice prong, the

6

court may address the prejudice prong first "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice." *Id.* (citing *Strickland* 466 U.S. at 697).

B. <u>Ineffectiveness Concerning Issue of Suppression</u>

Thomas first argues that his counsel was ineffective because she advised Thomas not to admit to possession of the guns because "he would lose at trial if he claimed that the guns belonged to him." (Pet. Mem. at 15.) Thomas contends that he had a viable Fourth Amendment claim of unlawful search based on his allegations that he had possessed the bag when the officers stopped him, and that Thomas had not given his consent to search the duffel bag. Instead, counsel made a motion to suppress the guns on the grounds that the search was unlawful due to a bad stop under to *Terry v. Ohio*, 392 U.S. 1 (1968). Thomas also claims that counsel pursued a deficient strategy by presenting witnesses on Thomas' behalf who were not credible, and by "fruitlessly tr[ying] to impeach the arresting officers." (Pet. Mem. at 15.)

In essence, Thomas claims that his counsel pursued the wrong strategy in arguing the motion to suppress on non-possessory grounds. However, *Strickland* holds that there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and that a petitioner "must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy." *Strickland*, 466 U.S. at 689. Significantly, effective assistance of counsel does not require an action "'that is effective in whatever way, and to whatever extent, the defense might wish.'" *Rolan v. Coleman*, 680 F.3d 311, 327 (3d Cir. 2012) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam)).

Here, the defense tactic chosen by counsel does not meet that deficiency standard. Only through Thomas' distorted lens of hindsight, admonished by the Supreme Court in *Strickland*, 466 U.S. at 689, does Thomas now claim that his counsel's alleged advice was ineffective. This

Court notes, however, that counsel was successful in excluding several of Thomas' post-arrest statements, and that she was able to cross-examine the detectives about their disciplinary records, as well as providing witnesses at trial who provided testimony in support of Thomas' defense. All of this belies Thomas' contention that Gauli-Rufo rendered deficient performance. Indeed, possession of the guns was a necessary element of an 18 U.S.C. § 922(g)(1) offense that the Government had the burden to prove. It would have been imprudent to claim ownership of the guns on the slim chance that counsel could prevail on a suppression motion based on failure to give consent, as now suggested by Thomas.

  Further, Thomas' claim that counsel pursued an ineffective strategy is mere speculation as Thomas has offered no evidentiary support for his contention that a motion to suppress on possessory grounds would have been successful. The affidavits of purported witnesses were not provided. Such mere speculation cannot demonstrate counsel's deficient performance under *Strickland*. *See, e.g., Palmer v. Hendricks*, 592 F.3d 386, 397-98 (3d Cir. 2010) (holding that speculation is insufficient to demonstrate deficiency).

  Moreover, as the Government correctly contends, even if counsel's strategy for suppression was deficient, Thomas cannot prove the necessary prejudice to sustain his claim of ineffective assistance of counsel. First, as noted above, Thomas has failed to show that a suppression motion on possessory grounds would have been successful. While Thomas alludes to three witnesses whose affidavits would confirm that he had possession of the duffel bag when he was stopped by Detectives Miranda and Vernotica, he does not provide these affidavits. Nor does he show that his testimony at the suppression hearing would have proved effective. His recitation of the factual circumstances of his stop and search are plainly at odds with Detective Miranda's testimony at the suppression hearing concerning the incident. Indeed, Detective

8

Miranda's testimony was corroborated by Detective Vernotica, and Thomas provides no similar corroboration. Thus, without any corroboration of Thomas' account, and given Thomas' extensive criminal history, it is highly unlikely that this Court would have credited Thomas' testimony over Detective Miranda's testimony, even if Thomas had testified at the suppression hearing as he now argues.

Second, even if Thomas' testimony at the suppression hearing could not be used against him at trial on the issue of guilt, *see Simmons v. United States*, 390 U.S. 377 (1968), it could be used to impeach him if he chose to testify at trial. Moreover, *Simmons* would not preclude the use of testimony at trial of Thomas' purported witnesses to prove that they saw Thomas in possession of the duffel bag containing the guns. Such testimony, as the Government states, would have "put the guns in Thomas's hand [and] would have been fatal to his defense at trial." (Resp. Answer at 12.)

Third, Thomas' current rendering of events regarding his possession of the duffel bag is completely opposite of the testimony he elicited at trial, namely, that he never possessed the duffel bag as he now claims.

Finally, Thomas does not refute that one of the guns was protruding from the bag. Consequently, even if this Court did credit Thomas' version of events, suppression would have been denied because the guns would have been discovered through plain view.

Therefore, the claim of ineffective assistance of counsel concerning the issue of suppression is denied as substantively meritless.

C. Failure to Advise Acceptance of a Plea Offer

Thomas next contends that his counsel was ineffective because she advised him to reject a plea offer. The Supreme Court recently held that a defendant's Sixth Amendment right to

9

counsel extends to the plea-bargaining process. *Missouri v. Frye*, ___ U.S. ___, ___, 132 S.Ct. 1399, 1407-08, 182 L.Ed.2d 379 (2012). Thus, a defendant is plainly entitled to the effective assistance of counsel during plea negotiations. *Lafler v. Cooper*, ___ U.S. ___, ___, 132 S.Ct. 1376, 1384, 182 L.Ed.2d 398 (2012) (holding that petitioner was prejudiced by trial counsel's incorrect advice to reject a plea offer where petitioner then went to trial and received a much higher sentence). This right, in the plea-bargaining context, encompasses claims that counsel provided incorrect legal advice that resulted in a defendant rejecting a favorable plea offer. *Lafler*, 132 S.Ct. at 1384; *Frye*, 132 S.Ct. at 1409-10.

*Strickland*'s two-pronged standard likewise applies in evaluating claims of ineffective assistance of counsel during the plea process. *See Hill v. Lockhart*, 474 U.S. 52, 57, 106 S.Ct. 366, 369, 88 L.Ed.2d 203, 209 (1985). For instance, deficient performance may be established by showing that defense counsel failed to communicate a formal plea offer to the defendant. *Frye*, 132 S.Ct. at 1408. Under the prejudice prong "a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler*, 132 S.Ct. at 1384. Thus, if a defendant rejects a plea, he must show that "but for counsel's deficient performance there is a reasonable probability he and the trial court would have accepted the guilty plea" and the resulting sentence would have been lower. *Id*. at 1391; *see also Frye*, 132 S.Ct. at 1409; *Shotts v. Wetzel*, 724 F.3d 364, 374-76 (3d Cir. 2013); *United States v. Booth*, 432 F.3d 542, 546-47 (3d Cir. 2005).

Here, the Government states that a plea was not offered to Thomas' counsel, and Thomas has not shown otherwise. Since no formal plea offer was made, Gauli-Rufo could not have been ineffective for failing to accept it on Thomas' behalf. Indeed, in *Lafler*, the Supreme Court made clear that there can be no ineffective assistance of counsel claim under *Strickland* if there is no

actual plea offer. *Lafler*, 132 S.Ct. at 1387 (stating that defendants have "no right to be offered a plea ... nor a federal right that the judge accept it"); *see also United States v. Rendon-Martinez*, 497 F. App'x 848 (10th Cir. 2012) (observing that "there was no plea offer made here, and there's no right to a plea offer"); *McClain v. United States*, Civil No. 12-2205 (FLW), 2013 WL 1163562, at *4 (D.N.J. Mar. 19, 2013) (same).

The United States Supreme Court has long recognized that "there is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial." *Weatherford v. Bursey*, 429 U.S. 545, 561, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977); *McClain, supra* (commenting that "[n]either the Sixth Amendment or any relevant case law sets forth an obligation for defense counsel to *seek* a plea offer or to counsel his/her client of the benefits and obligations of a *hypothetical* offer") (emphasis in original). Consequently, because Thomas fails to show that he asked his counsel to explore entering a guilty plea, or that the Government actually made a plea offer to counsel, this claim must be dismissed.

## CERTIFICATE OF APPEALABILITY

For the reasons discussed above, this Court denies a certificate of appealability because Petitioner has not demonstrated "a substantial showing of the denial of a constitutional right" as required under 28 U.S.C. § 2253(c)(2). *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S.Ct. 1029, 1035, 154 L.Ed.2d 931, 944 (2003).

## CONCLUSION

For the reasons set forth above, this Court **DENIES** Petitioner's Motion and **DECLINES** to issue a certificate of appealability.   An appropriate Order follows.


　　　　　　　　　　　　　　　　　　　/s/ Susan D. Wigenton, U.S.D.J.
　　　　　　　　　　　　　　　　　　　SUSAN D. WIGENTON
　　　　　　　　　　　　　　　　　　　United State District Judge